**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| JOSUE ORELLANA GOMEZ,<br><br>Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; 700 Credit, LLC; and Nowcom, LLC,<br><br>Defendants. | Case No.: 1:25-cv-00533-RDA-LRV<br><br>**AMENDED COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

Plaintiff Josue Orellana Gomez, by and through counsel, brings this action on an individual basis, under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq*. (the "FCRA"), against Defendants Experian Information Solutions, Inc. ("Experian"); 700 Credit, LLC ("700 Credit"); and Nowcom, LLC ("Nowcom"), and alleges as follows:

## SUMMARY OF CLAIMS

1. As alleged in detail below, Experian mixed Plaintiff's credit file with the credit file of an entirely different consumer.

2. The mixed file was caused by Experian's failure to maintain procedures to assure the maximum possible accuracy of the information included in Plaintiff's credit reports, in violation of the FCRA, § 1681e(b).

3. Experian then sold credit reports to prospective creditors containing numerous accounts and other personal identifying information that did not belong to Plaintiff.

4. 700Credit and Nowcom resold those mixed reports despite evidence of error.

5. As a result of the mixed file, Plaintiff was unable to obtain auto financing and could

not purchase a car that he desperately needed.

6. Accordingly, Plaintiff is entitled to damages under the FCRA, § 1681n and/or § 1681o.

## PARTIES

7. Plaintiff is a natural person residing in 870 South Greenbrier Street, Arlington, Virginia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

8. Defendant Experian Information Solutions, Inc. is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of Virginia, including within this District. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

9. Defendant 700 Credit is a corporation with a principal place of business located at 31440 Northwestern Highway Suite 250, Farmington Hills, MI, 48334. Defendant 700 Credit is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). 700 Credit is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

10. Defendant 700 Credit is also a "reseller" as that term is defined by 15 U.S.C. § 1681a(u).

11. Defendant Nowcom is a corporation with a principal place of business located at 4751 Wilshire Blvd., Suite 115, Los Angeles, CA 90010. Nowcom is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Nowcom is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

12. Defendant Nowcom is also a "reseller" as that term is defined by 15 U.S.C. § 1681a(u).

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND – EXPERIAN'S MIXED FILE PROBLEM

15. In 2024, a unanimous Supreme Court—discussing the "importance of accuracy in credit reporting"—agreed that, today, "[a] credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business." *Department of Agriculture Rural Development Rural Housing Service v. Kirtz*, 601 U.S. 42 (2024). The FCRA is meant to ensure that such consumers are given a fair shake, but *Kirtz* cited findings that "over 34% of consumers [] were able to identify at least one error in their credit reports." *Id.* The Court agreed that "[m]istakes like these can lead lenders to insist on higher interest rates or other terms that make it difficult or impossible for consumers to obtain a mortgage, auto loan, student loan, or other credit." *Id.* (internal quotations omitted).

16. A recurring and *known* issue with Experian's consumer reports is the creation of "mixed files." The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is subject to that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

17. A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files. "Mixed files" create a false description and representation of a consumer's credit history and can result in the consumer not obtaining credit or other benefits of our economy.

18. Another consequence of mixed files is the resulting disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both. This occurs when a consumer's file is mixed with that of another consumer, and either of those consumers applies for credit, housing, insurance, or employment, and Defendants sell information pertaining to one consumer in response to the application of the other. This violates the consumer's privacy and increases their risk of identity theft.

19. Defendant Experian's procedures for matching consumer information to a consumer report often cause the mixing of one consumer with another. Plaintiff's mixed file is not a new phenomenon.

20. Defendant Experian has been on notice of the fact that its procedures for creating credit files, including its matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982). The Federal Trade Commission ("FTC"), along with Attorneys General of numerous states, have sued Defendant Experian and/or its predecessor TRW because of its failure to comply with the FCRA, including the mixing of consumers' files. *See, e.g.*, *In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian et al.* (New York 2015).

21. But Defendant Experian continues to repeatedly mix consumers' files, resulting in litigation by consumers whose files have been mixed. Judgments and jury verdicts in those cases further indicate Experian's knowledge of the mixed file issue and culpability for not fixing it.

**The "Mixed File" Problem is Known to Defendant 700 Credit and Defendant Nowcom**

22. Resellers purchase consumers' credit information from other Credit Reporting Agencies ("CRAs"), such as Defendant Experian.

23. Once Resellers, such as Defendant 700 Credit and Defendant Nowcom, receive consumer credit information from other CRAs, it assembles and merges the information into a credit report, which it then sells to third parties

24. Resellers, like Defendant 700 Credit and Defendant Nowcom, are subject to the FCRA's requirement to use reasonable procedures to assure maximum possible accuracy of the information in the consumer reports they sell. 15 U.S.C. § 1681e(b).

25. Courts have repeatedly held that resellers do not meet the requirements of Section 1681e(b) by merely reproducing the information furnished to them by other credit bureaus. *See, Rogue v. CoreLogic Credco, LLC*, No. 19-cv-00260-BLW, 2020 WL 7061745 at *4 (D. Idaho Dec. 2, 2020) ("[D]istrict courts have repeatedly rejected Credco and other resellers' arguments that a reseller is only required to accurately reproduce the information furnished to it by other credit bureaus. These courts have, instead, found that, as a matter of law, a reseller can be subject to liability under § 1681e(b) for failing to follow reasonable procedures to assure the maximum possible accuracy of the information it provides on a consumer"); *Starkey v. Experian Information Solutions, Inc.*, 32 F. Supp. 3d 1105, 1109-11 (C.D. Cal. 2014) (rejecting Credco's argument that its report was "accurate" because it "fully and accurately included all of the information [the CRAs] provided," holding that a reseller, like other consumer reporting agencies, must employ reasonable procedures to assure the maximum possible accuracy of the information in its report); *Dirosa v. Equifax Information Servs, LLC*, 2014 WL 3809202, at *3 (C.D. Cal. Jan. 21, 2014) (rejecting Credco's argument that it was not liable under § 1681e(b) because it "fully and

accurately included all of the information [the CRAs] provided"); *Ocasio v. CoreLogic Credco, LLC*, 2015 WL 5722828, at **3-4 (D. NJ. Sept. 29, 2015) (rejecting Credco's argument that its procedures were reasonable as a matter of law under § 1681e(b) "because it accurately compiled and reported information collected from the credit bureaus"); *Willoughby v. Equifax Svs., LLC*, 2013 WL 8351203, at **2-3 (N.D. Ala. Aug. 12, 2013) (finding that resellers are subject to the same requirements under § 1681(b) as other consumer reporting agencies to follow reasonable procedures to assure the accuracy of its reports); *Waterman v. Experian Information Solutions, Inc.*, 2013 WL 675764, at **2-3 (C.D. Cal. Feb. 25, 2013) (same); *Dively v. Trans Union, LLC*, 2012 WL 246095, at **3-4 (E.D. Penn. Jan. 26, 2012) (same).

26. The Federal Trade Commission has also explained that "[p]ersons who purchase consumer reports for resale (also known as 'resellers') are covered by the FCRA as consumer reporting agencies, and have all the obligations of other CRAs..." Prepared Statement of Fed. Trade Commiss. On the Fair Credit Reporting Act Before the Senate Banking Committee on Banking, Housing, and Urban Affairs, 2003 FTC LEXIS 101, 14-15 (July 10, 1993).

27. Notwithstanding all this notice, Defendant 700 Credit and Defendant Nowcom continue to sell consumer reports without sufficient independent investigation, audits, research, or review to assure that the information in the reports is accurate.

28. This lack of procedures is highlighted by Defendant 700 Credit's and Defendant Nowcom's lack of procedures to prevent selling mixed files.

29. Defendant 700 Credit and Defendant Nowcom are aware that the CRAs it purchases information from, including Defendant Experian, have a long history of mixed file problems.

30. Defendant 700 Credit and Defendant Nowcom know of the CRAs' practice of mixing consumer files, including Defendant Experian's practice of mixing consumer files, but

Defendant 700 Credit and Defendant Nowcom refuse to implement any procedures to adequately review or analyze Defendant Experian's data to determine if Defendant Experian is providing information from a mixed file.

31. Despite knowing about the lawsuits, government enforcement actions, and Defendant Experian's history of mixing consumer's files, Defendant 700 Credit and Defendant Nowcom took no action to assure accuracy of the information it reported although it was obvious that Defendant Experian mixed Plaintiff's file with the file of a different consumer who had a different name, social security number, address history, and credit accounts.

32. Instead, as is the case here, Defendant 700 Credit and Defendant Nowcom resold Defendant Experian's information without conducting any level of review as to its accuracy. Both Defendant 700 Credit and Defendant Nowcom did so even when the data had obvious red flags of a mixed file.

33. Despite knowing the breadth and severity and even the consequences of the mixed file problem, Defendants do not maintain policies and procedures to ensure compliance with their duties under the FCRA.

34. Plaintiff's claims arise out of the Defendants' blatantly inaccurate credit reporting, wherein Defendants published in consumer reports about Plaintiff the information of another consumer because Defendants mixed Plaintiff's credit file with that of an unrelated consumer.

## FACTUAL ALLEGATIONS

35. Plaintiff Josue Orellana Gomez moved to this country from Honduras in June 2001. He has lived in Virginia for twenty-four years. Plaintiff lives with his son.

36. On December 30, 2024, in need of a new vehicle for himself and his household, Plaintiff sought to purchase a 2015 Toyota Camry sedan. In order to purchase the vehicle, Plaintiff

needed financing. Plaintiff applied for auto financing at the Fitzgerald Lakeforest Toyota dealership (the "Toyota Dealership").

37. In connection with that application, on December 30, 2024, the Toyota Dealership obtained Plaintiff's credit report to determine whether he was qualified for financing.

38. The Toyota Dealership obtained Plaintiff's 700 Credit report which resold Plaintiff's Experian report.

39. Based on that report, upon information and belief, the Toyota Dealership denied Plaintiff's loan application.

40. Plaintiff believed that he was well-qualified for a loan and was extremely concerned and surprised that his application was denied.

41. Plaintiff then obtained a copy of the Experian report from the Toyota Dealership and was shocked to see that the report included numerous accounts and other information that did not belong to him, as follows (enumerated A–H for purposes of this pleading only):

| | |
|---|---|
| **(A) Capital One**<br>Date Opened: 08/22<br>Balance Amount: $10,450<br>Status: Credit Card/Individual/Open | **(E) Comenity Capital Bank/Carter's**<br>Date Opened: 03/24<br>Balance Amount: $583<br>Status Charge Account/Individual/Open |
| **(B) Capital One**<br>Date Opened: 05/15<br>Balance Amount: $9,066<br>Status: Credit Card/Authorized User/Open | **(F) Citibank, N.A.(CBNA)**<br>Date Opened: 08/23<br>Balance Amount: $436<br>Status: Credit Card/Individual/Open |
| **(C) Capital One**<br>Date Opened: 09/19<br>Balance Amount: $582<br>Status: Credit Card/Individual/Open | **(G) Capital One Auto Finance**<br>Account No: 62010208176041001<br>Date Opened: 08/22<br>Balance Amount: $14,185<br>Status: Installment/Individual/Open |

| | |
|---|---|
| **(D) Synchrony Bank/ American Eagle**<br>Date Opened: 02/21<br>Balance Amount: $0<br>Status: Revolving Charge Account/Individual/Closed. | **(H) Ally Financial**<br>Account No.: 228041145099<br>Date Opened: 07/21<br>Balance Amount: $0<br>Status: Installment/Individual/Open |

42. Three accounts—(A) Capital One; (E) Comenity Capital Bank/Carter's; and (F) CBNA—had at least one late mark. The (A) Capital One account had a sixty-day (60-day) late mark, which, according to the Experian report provided to Plaintiff and relied upon by the Toyota Dealerships, constituted a "serious delinquency" according to the FICO AUTO V8 score.

43. In sum, Experian and 700 Credit falsely reported that Plaintiff had an outstanding $23,000 auto loan and three Capital One credit cards with a combined balance of roughly $10,000, as well as other false accounts and late marks.

44. Experian and 700 Credit also reported names that do not belong to Plaintiff: Calero Jose Orellana; Jose Calero; Jose M Orellana, and Jose Manuel Calero. Experian and 700 Credit reported addresses that never belonged to Plaintiff, too: one in Arlington, and the other in Falls Church, Virginia.

45. None of these accounts and items of information belonged to Plaintiff. The Experian and 700 Credit reports themselves bore evidence of the mix, including the strange Special Messages "INPUT SSN INVALID-OUT OF RANGE" and "NO SSN PROVIDED" that should have put them on notice of the mix.

46. Plaintiff never financed a vehicle purchase or lease through Capital One Auto Finance. Plaintiff previously owned two cars: a 2013 Honda Civic that he financed and paid off in or about 2019; and a Mercedez Benz that he purchased with cash. Those cars were sold on or around 2022 and 2024, respectively.

47. Shortly thereafter, in January 2025, Plaintiff obtained copies of his Equifax and TransUnion credit reports. The inaccurate, mixed information was reported neither by Equifax nor by TransUnion.

48. Plaintiff was shocked and dismayed at the credit denial, especially because Plaintiff takes care of his credit.

49. 700 Credit was thus on notice that the information it was reporting had been compiled with an "invalid" SSN and contained several names that, on their face, did not match each other.

50. 700 Credit had no procedures in place to flag, address, and correct a situation in which the information it obtained from Experian or any other source indicated on its face that it was reporting the information of two consumers.

51. 700 Credit did not have a procedure in which, upon learning that the input SSN was "invalid" and that there were several unrelated names on the report, it would take steps to avoid reporting false, delinquent accounts and instead report accurate information.

52. Had 700 Credit acted reasonably, it would have declined to parrot Experian's report—which was mixed on its face due to the acknowledged "invalid" or not-provided SSN and contradictory names—and instead proffered Plaintiff's Trans Union report, which bore no mix and no delinquencies.

53. Alternatively, had it been acting reasonably, 700 Credit could have declined to parrot Experian's facially-false or facially-suspect report and instead solicited and proffered Plaintiff's Equifax report, which also bore no mix and no delinquencies.

54. As a third option, if 700 Credit was unable to get Plaintiff's Equifax and Trans Union reports, 700 Credit could have declined to provide a repackaged Experian report to the

dealership on the basis that the Experian report was just too likely to be mixed or inaccurate on account of the fact that no SSN had been provided and that the names on the report were obviously contradictory. Upon information and belief, the dealership would have then likely, of its own accord, pulled Plaintiff's Trans Union or Equifax reports, since 700 Credit was not providing an option via Experian.

55. If 700 Credit had taken any of these reasonable procedures to assure the maximum possible accuracy of the report it provided, Plaintiff's loan application would have been approved, and Plaintiff would have been able to purchase the car he had applied to purchase.

56. Defendant 700 Credit violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

57. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

**Plaintiff Applies at Prime Motors LLC and Is Denied by Nowcom LLC**

58. Plaintiff, whose primary language is Spanish, attempted to secure an auto loan by going to a different dealership.

59. On or about January 16, 2025, Plaintiff attended Prime Motors LLC to attempt to purchase a 2016 (or 2017) Toyota Camry.

60. In a letter dated January 16, 2025, Prime Motors LLC denied Plaintiff's application, based on Plaintiff's Nowcom LLC report, which resold Plaintiff's Experian report. The letter said Plaintiff had a score of 536 on his Experian report.

61. The letter gave the reasons for the denial as: a "serious delinquency" as well as a high balance to limit ratio on revolving accounts. These reasons directly implicated the false, mixed information as the cause of the denial.

62. Upon information and belief, the Experian and Nowcom LLC reports themselves bore evidence of the mix, including the strange Special Messages "INPUT SSN INVALID-OUT OF RANGE" that should have put them on notice of the mix.

63. Defendant Nowcom violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

64. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

**The Toyota Dealership Denies Plaintiff's Renewed Auto Financing Applications Based on an Experian Report Containing Mixed Information (January and February 2025)**

65. On January 30, 2025, Plaintiff again sought financing at the Toyota Dealership for the 2015 Toyota Camry sedan, acting in good faith and with the reasonable belief that the dealership would either rely on a consumer reporting agency that employed procedures to ensure the accuracy of the data it disseminated, or that 700 Credit—being on plenary notice that the Experian report it previously furnished was facially mixed and inaccurate—would cease re-publishing that report and instead provide a report from a distinct credit bureau, such as TransUnion or Equifax.

66. This undertaking to secure an auto loan was particularly motivated by Plaintiff's need for a vehicle.

67. As part of that process, the salesperson and/or finance representative submitted loan applications to multiple financial institutions.

68. The dealership again obtained Plaintiff's 700 Credit report, which resold Plaintiff's Experian report, again without implementing any of the reasonable procedures described above.

69. On or about January 30, 2025, Toyota Financial Services denied Plaintiff's application on the basis of delinquency and lack of available credit on open accounts. The delinquencies and high usage on Plaintiff's report were attributable to the false, mixed accounts. Thus, upon information and belief, absent the false reporting by Experian, Plaintiff would have been approved.

70. On that same date, Kensington Finance, Inc. denied Plaintiff's application on the basis of "excessive credit obligations." The *eight* falsely-reported mixed accounts caused Kensington Finance, Inc., to wrongly believe that Plaintiff had excessive credit obligations. Thus, upon information and belief, absent the false reporting by Experian, Plaintiff would have been approved.

71. On that same date, Ally Financial denied Plaintiff's application on the basis of (1) "unable to verify personal information," as well as (2) a recent "delinquency" and (3) a high balance-to-limit ratio. Each of these three reasons directly implicated the false, mixed information as the cause of the denial. Reasons (2) and (3) implicated the false, mixed information as related hereinabove. Reason (1) implicated the mixed file because Experian reported names and addresses that did not belong to Plaintiff. Moreover, upon information and belief, Experian's report to Ally Financial incorrectly stated Plaintiff's year of birth as 1999, when in fact Plaintiff was born in 1979.

72. Upon information and belief, the Toyota Dealership also again denied Plaintiff financing because of the report provided by 700 Credit.

73. Later, on or about February 13, 2025, Ally Financial again denied Plaintiff's application for financing on the 2015 Toyota Camry, based on the "delinquency" and balance-to-limit issues on Plaintiff's Experian report, which stemmed from the false information.

**Plaintiff's Damages**

74. As a result of the "mixed file," Experian, 700 Credit, and Nowcom made it practically impossible for Plaintiff to obtain credit, specifically an auto loan.

75. Due to Defendants' inaccurate reporting, Plaintiff was unable to secure financing and suffered repeated credit denials. Plaintiff has now been forced to spend money on Uber for errands like shopping and taking care of other needs: tasks that would have been much easier and more affordable with a car.

76. Each of the Defendants' violations caused Plaintiff emotional distress. Plaintiff is concerned that the ongoing mix of him with a different individual may have lasting implications that he cannot escape. Plaintiff felt extremely stressed at the thought that someone might have used his information to apply for a credit card and an auto loan. This situation left him scared and anxious. He spent a significant amount of time trying to contact credit agencies to obtain his reports. This was the first time unknown accounts had appeared on his credit report. Plaintiff experienced feelings of disappointment, anxiety, stress, and depression. Plaintiff has been experiencing headaches, difficulty sleeping, and a decrease in appetite.

77. Defendants' are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, each of the Defendants' violations of the FCRA are willful.

78. As a result of each of the Defendants' conduct, action, and inaction, Plaintiff suffered damages including but not limited to damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Claim for Relief Against Defendant Experian)**

79. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

80. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

81. On at least one occasion, Defendant Experian prepared patently false consumer reports concerning Plaintiff.

82. Defendant Experian mixed another consumer's personal and credit account information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

83. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

84. As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

85. Defendant Experian's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant Experian was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

86. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Claim for Relief Against Defendant 700 Credit)**

87. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

88. The above-referenced reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

89. The duties of a reseller under §1681e(b) are the same as for any other consumer reporting agency. *See generally Ocasio v. CoreLogic Credco, LLC*, 2015 WL 5722828, at *2 (D.N.J. Sept. 29, 2015).

90. Defendant 700 Credit negligently and/or willfully failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports it published concerning Plaintiff.

91. Defendant 700 Credit knew or should have known from the face of the report it provided regarding Plaintiff that it was inaccurate and that its procedures were not reasonable.

92. Defendant 700 Credit violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff, when it mixed Plaintiff's file with that of another entirely different consumer.

93. As a result of Defendant 700 Credit's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

94. Defendant 700 Credit's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, 700 Credit was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

95. Plaintiff is entitled to recover attorneys' fees and costs from Defendant 700 Credit in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681e(b)
## Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
## (Claim for Relief Against Defendant Nowcom)

96. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs as if fully stated herein.

97. The above-referenced reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

98. The duties of a reseller under §1681e(b) are the same as for any other consumer reporting agency. *See generally Ocasio v. CoreLogic Credco, LLC*, 2015 WL 5722828, at *2 (D.N.J. Sept. 29, 2015).

99. Defendant Nowcom negligently and/or willfully failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports it published concerning Plaintiff.

100. Defendant Nowcom knew or should have known from the face of the report it provided regarding Plaintiff that it was inaccurate and that its procedures were not reasonable.

101. Defendant Nowcom violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff, when it mixed Plaintiff's file with that of another entirely different consumer.

102. As a result of Defendant Nowcom's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

103. Defendant Nowcom's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Nowcom was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

104. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Nowcom in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendants negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: May 13, 2025

*/s/ Aryeh E. Stein*

Aryeh E. Stein, Esq.
Bar No. 45895
Meridian Law, LLC
1212 Reisterstown Road
Baltimore, MD 21208
T: (443) 326-6011
F: (410) 782-3199
E: astein@meridianlawfirm.com

David Pinkhasov, Esq.
NY Bar No. 5925904
(Pro Hac Vice Admitted)
68-29 Main Street
Flushing NY 11367
T: (718) 701-4605
F: (718) 715-1750
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Josue Orellana Gomez*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

*/s/ Aryeh E. Stein*
Aryeh E. Stein, Esq.
Bar No. 45895
Meridian Law, LLC
1212 Reisterstown Road
Baltimore, MD 21208
T: (443) 326-6011
F: (410) 782-3199
E: astein@meridianlawfirm.com

David Pinkhasov, Esq.
NY Bar No. 5925904
(Pro Hac Vice Admitted)
68-29 Main Street
Flushing NY 11367
T: (718) 701-4605
F: (718) 715-1750
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Josue Orellana Gomez*