IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOSUE ORELLANA GOMEZ,                )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )        Civil Action No. 1:25-cv-533 (RDA/LRV)
                                     )
EXPERIAN INFORMATION SOLUTIONS       )
INC., *et al.*,                      )
                                     )
        Defendants.                  )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Nowcom, LLC's Motion to Dismiss (Dkt. 31) and Defendant 700 Credit, LLC's Motion to Dismiss (Dkt. 32) (collectively, the "Motions"). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is fully briefed and ripe for disposition. Considering the Amended Complaint (Dkt. 23), Defendant 700 Credit, LLC's Memorandum in Support (Dkt. 33), Plaintiff's Oppositions (Dkts. 39, 40), and Defendants' Replies (Dkts. 42, 43), this Court DENIES the Motions for the reasons that follow.

## I. BACKGROUND

### A. Factual Background[1]

This case is about an allegedly "mixed" credit file. A mixed file occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files. Dkt. 23 ¶ 17. Mixed files create a false description and representation of a consumer's credit

---

[1] For purposes of considering the Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

history and can result in the consumer not obtaining credit or other benefits of our economy. *Id.* Another consequence of mixed files is the resulting disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both. *Id.* ¶ 18. This occurs when either of the consumers whose information is in the mixed file applies for credit, housing, insurance, or employment, and credit reporting agencies sell information pertaining to one consumer in response to the application of the other. *Id.*

As relevant here, one such credit reporting agency, Defendant Experian, has procedures for matching consumer information to consumer reports that allegedly often cause the mixing of one consumer with another. *Id.* ¶¶ 8, 19. Experian has been on notice of this issue for over thirty years. *Id.* ¶ 20 (citing *Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982)). The Federal Trade Commission, Attorneys General of numerous states, and consumers have sued Experian and its predecessor for mixing consumer files. *Id.* ¶¶ 20, 21.

On December 30, 2024, Plaintiff Josue Orellana Gomez was in need of a new vehicle for himself and his household and sought to purchase a 2015 Toyota Camry sedan. *Id.* ¶ 36. In order to purchase the vehicle, Plaintiff needed financing. *Id.* Plaintiff applied for auto financing at the Fitzgerald Lakeforest Toyota dealership (the "Toyota Dealership"). *Id.* In connection with that application, the Toyota Dealership obtained Plaintiff's credit report to determine whether he was qualified for financing. *Id.* ¶ 37. 700 Credit resold Plaintiff's Experian Report to the Toyota Dealership. *Id.* ¶ 38. Thereafter, the Toyota Dealership denied Plaintiff's loan application. *Id.* ¶ 39. Plaintiff alleges, on information and belief, that the Toyota Dealership denied the application based on the 700 Credit report. *Id.*

Plaintiff believed that he was well-qualified for a loan and was concerned that his application was denied. *Id.* ¶ 40. Plaintiff therefore obtained a copy of the Experian report from

the Toyota Dealership and was shocked to see that the report included numerous accounts and other information that did not belong to him:

(A) Capital One
Date Opened: 08/22
Balance Amount: $10,450
Status: Credit Card/Individual/Open

(B) Capital One
Date Opened: 05/15
Balance Amount: $9,066
Status: Credit Card/Authorized User/Open

(C) Capital One
Date Opened: 09/19
Balance Amount: $582
Status: Credit Card/Individual/Open

(D) Synchrony Bank/American Eagle
Date Opened: 02/21
Balance Amount: $0
Status: Revolving Charge Account/
Individual/Closed

(E) Comenity Capital Bank/Carter's
Date Opened: 03/24
Balance Amount: $583
Status: Charge Account/Individual/Open

(F) Citibank, N.A.
Date Opened: 08/23
Balance Amount: $436
Status: Credit Card/Individual/Open

(G) Capital One Auto Finance
Date Opened: 08/22
Balance Amount: $14,185
Status: Installment/Individual/Open

(H) Ally Financial
Date Opened: 07/21
Balance Amount: $0
Status: Installment/Individual/Open

*Id.* ¶ 41.  Three accounts—(A), (E), and (F)—had at least one late mark.  *Id.* ¶ 42.  One account—(A)—had a sixty-day late mark, which, according to the Experian report provided to Plaintiff and relied upon by the Toyota Dealerships, constituted a "serious delinquency" according to the FICO AUTO V8 score.  *Id.*

In sum, Plaintiff alleges that Experian and 700 Credit falsely reported that Plaintiff had an outstanding $23,000 auto loan and three Capital One credit cards with a combined balance of roughly $10,000, as well as other false accounts and late marks.  *Id.* ¶ 43.  Plaintiff never financed a vehicle purchase or lease through Capital One Auto Finance.  *Id.* ¶ 46.  Plaintiff previously owned two cars: a 2013 Honda Civic that he financed and paid off in or about 2019; and a Mercedez Benz that he purchased with cash.  *Id.*  Those cars were sold on or around 2022 and 2024, respectively. *Id.*

Experian and 700 Credit also reported names that do not belong to Plaintiff: Calero Jose Orellana; Jose Calero; Jose M Orellana; and Jose Manuel Calero. *Id.* ¶ 44. Experian and 700 Credit reported addresses that never belonged to Plaintiff too: one in Arlington, and the other in Falls Church, Virginia. *Id.* None of these accounts and items of information belonged to Plaintiff. *Id.* ¶ 45. The Experian and 700 Credit reports also included the Special Messages "INPUT SSN INVALID-OUT OF RANGE" and "NO SSN PROVIDED." *Id.*

Shortly thereafter, in January 2025, Plaintiff obtained copies of his Equifax and TransUnion credit reports. *Id.* ¶ 47. The inaccurate, mixed information was not included in either report. *Id.*

Plaintiff then attempted to secure the auto loan by going to a different dealership. *Id.* ¶ 58. On or about January 16, 2025, Plaintiff went to Prime Motors LLC to attempt to purchase a 2016 (or 2017) Toyota Camry. *Id.* ¶ 59. In a letter dated January 16, 2025, Prime Motors LLC denied Plaintiff's application based on Plaintiff's Nowcom LLC report, which also resold Plaintiff's Experian report. *Id.* ¶ 60. The letter said Plaintiff had a credit score of 536 on his Experian report. *Id.* The letter gave the reasons for the denial as a "serious delinquency," as well as a high balance to limit ratio on revolving accounts. *Id.* ¶ 61. Plaintiff alleges upon information and belief that the Experian and Nowcom LLC reports also bore the Special Message "INPUT SSN INVALID-OUT OF RANGE." *Id.* ¶ 62.

On January 30, 2025, Plaintiff again sought financing at the Toyota Dealership for the 2015 Toyota Camry sedan, acting in good faith and with the belief that the dealership would either rely on a consumer reporting agency that employed procedures to ensure the accuracy of the data it disseminated, or that 700 Credit would cease republishing the report it previously furnished and instead provide a report from a distinct credit bureau, such as TransUnion or Equifax. *Id.* ¶ 65.

4

This undertaking to secure an auto loan was particularly motivated by Plaintiff's need for a vehicle. *Id.* ¶ 66. As part of that process, the salesperson and/or finance representative submitted loan applications to multiple financial institutions. *Id.* ¶ 67. The dealership again obtained Plaintiff's 700 Credit report, which resold Plaintiff's Experian report. *Id.* ¶ 68.

On or about January 30, 2025, Toyota Financial Services denied Plaintiff's application on the basis of delinquency and lack of available credit on open accounts. *Id.* ¶ 69. The delinquencies and high usage on Plaintiff's report were attributable to the false, mixed accounts. *Id.* Thus, Plaintiff alleges on information and belief, absent the false reporting by Experian, Plaintiff would have been approved. *Id.*

On that same date, Kensington Finance, Inc. also denied Plaintiff's application on the basis of "excessive credit obligations." *Id.* ¶ 70. The eight falsely reported mixed accounts caused Kensington Finance, Inc., to wrongly believe that Plaintiff had excessive credit obligations. *Id.* Thus, upon information and belief, absent the false reporting by Experian, Plaintiff would have been approved. *Id.*

On that same date, Ally Finance also denied Plaintiff's application on the basis of (1) being "unable to verify personal information," as well as (2) a recent "delinquency," and (3) a high balance-to-limit ratio. *Id.* Moreover, Plaintiff alleges, upon information and belief, that Experian's report to Ally Financial incorrectly stated Plaintiff's year of birth as 1999, when in fact Plaintiff was born in 1979. *Id.* Later, on or about, February 13, 2025, Ally Financial again denied Plaintiff's application for financing on the 2015 Toyota Camry based on the "delinquency" and balance-to-limit issues on Plaintiff's Experian report, which stemmed from the false information. *Id.* ¶ 73.

5

In sum, as a result of the "mixed file," Experian, 700 Credit, and Nowcom made it practically impossible for Plaintiff to obtain credit, specifically an auto loan. *Id.* ¶ 74. Due to Defendants' inaccurate reporting, Plaintiff was unable to secure financing and suffered repeated credit denials. *Id.* ¶ 75. Plaintiff asserts that he has now been forced to spend money on Uber for errands like shopping and taking care of other needs—tasks that would have been much easier and more affordable with a car. *Id.* Plaintiff further alleges that each of the Defendants' violations also caused Plaintiff emotional distress. *Id.* ¶ 76. Plaintiff is concerned that the ongoing mix of him with a different individual may have lasting implications that he cannot escape. *Id.*

### B.  Procedural Background

On March 27, 2025, Plaintiff initiated this civil action. Dkt. 1. On May 13, 2025, Plaintiff filed an Amended Complaint asserting three counts under the Fair Credit Reporting Act for failure to follow reasonable procedures to assure maximum possible accuracy against Defendant Experian (Count 1), Defendant 700 Credit (Count 2), and Defendant Nowcom (Count 3). Dkt. 23. On June 3, 2025, Defendants Nowcom and 700 Credit filed Motions to Dismiss. Dkts. 31, 32. On July 1, 2025, Plaintiff filed his Oppositions. Dkts. 39, 40. On July 11, 2025, Defendants Nowcom and 700 Credit filed their Replies. Dkts. 42, 43.

On August 4, 2025, Plaintiff filed a notice of settlement as to Defendant Experian, and, on August 25, 2025, Plaintiff filed a stipulation of dismissal as to the same. Dkts. 44, 46. Accordingly, on August 27, 2025, the Court dismissed the claims against Defendant Experian with prejudice. Dkt. 47.

## II.  LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'"  *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

## III.  ANALYSIS

In its Motion, Defendant 700 Credit argues that Plaintiff lacks standing to assert his claim against it because he fails to allege any harm that is fairly traceable to 700 Credit.  Dkt. 33.  For its part, Defendant Nowcom argues that Plaintiff fails to allege facts that would show Nowcom failed to fulfill its duties as a reseller.  Dkt. 31.  Because standing is a jurisdictional question, the Court will address this argument first before turning to Nowcom's argument.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (alteration in original) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

A.  Article III Standing

Article III, Section 2, clause 1 of the Constitution limits federal court jurisdiction to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  As the Supreme Court of the United States has explained, an "essential and unchanging part of the case-or-controversy requirement" is that a plaintiff must establish Article III standing to sue.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiff bears the burden of properly alleging standing.  *Lujan*, 504 U.S. at 561; *see also Balzer & Assocs., Inc. v. Union Bank & Trust Co.*, 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009) ("On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving subject matter jurisdiction." (citing *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991))).  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element."  *Spokeo, Inc.*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Specifically, Article III standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560-61).  To show a causal connection between a defendant's conduct and a plaintiff's injuries, the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560 (alterations in original) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

To determine whether an injury is traceable to a defendant's actions, the relevant inquiry is simply whether the defendant's alleged actions are "at least in part responsible" for the plaintiff's injuries.  *See Libertarian Party of Va. v. Judd*, 718 F.3d 308, 315-16 (4th Cir. 2013) (traceability

is not subject to "the stringent proximate cause standard[] derived from principles of tort law"; instead, courts look to "whether the pleadings and proof demonstrate a sufficient connection between the plaintiff's injury and the conduct of the defendant, such that a court ought to assert jurisdiction over the dispute") (citing *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997)).  Traceability "does not require the challenged action to be the sole or even immediate cause of the injury." *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018) (citing *Bennett*, 520 U.S. at 168-69).

Here, 700 Credit argues that Plaintiff's allegations establish that there is no injury fairly traceable to it.  Dkt. 33 at 6.  700 Credit notes that Plaintiff alleges he engaged in multiple transactions *after* the initial 700 Credit transaction.  *Id.* (citing Dkt. 23 ¶¶ 59-60).  Specifically, Plaintiff alleges that, despite having already learned of the alleged errors in the report 700 Credit resold and without disputing that report, he went back to the same Toyota Dealership and suffered the same result a second time.  *Id.* (citing Dkt. 23 ¶¶ 41, 65, 68-69).  That same day, Plaintiff also engaged in two additional attempts to get credit, resulting in denials based on Experian's report in transactions not alleged to have involved 700 Credit.  *Id.* at 6-7 (citing Dkt. 23 ¶¶ 70-71).  Despite allegedly having the correct Equifax and TransUnion reports at that time, in none of those subsequent transactions does Plaintiff allege he provided those reports to any of the dealerships or financial institutions, nor that he disputed the Experian report.  *Id.* at 7 (citing Dkt. 23 ¶ 47).  Thus, 700 Credit argues, Plaintiff's alleged harm is self-inflicted or otherwise traceable to defendants or third parties other than 700 Credit.  *Id.*

Although 700 Credit's argument may have some implications for questions regarding damages, the Court finds that Plaintiff's allegations here are sufficient to withstand the standing inquiry.  *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296-97 (2022) ("At bottom, the

Government asks us to recognize an exception to traceability for injuries that a party purposely incurs. We have never recognized a rule of this kind under Article III."). In any event, even if the Court were to consider 700 Credit's argument about self-inflicted harm, the subsequent transactions do not change that Plaintiff has sufficiently alleged traceability between 700 Credit's alleged failure to comply with its obligations under the Fair Credit Reporting Act ("FCRA") and Plaintiff's initial credit denial on or about December 30, 2024, and the alleged harms flowing from this first denial. Specifically, Plaintiff alleges that "Experian and 700 Credit falsely reported that Plaintiff had an outstanding $23,000 auto loan and three Capital One credit cards with a combined balance of roughly $10,000, as well as other false accounts and late marks." Dkt. 23 ¶ 43. Plaintiff alleges that this report had facial inaccuracies: numerous names not belonging to Plaintiff and an error reading "INPUT SSN INVALID-OUT OF RANGE." *Id.* ¶¶ 44-45, 49-52. Plaintiff further alleges that, if 700 Credit had taken reasonable procedures to assure the maximum possible accuracy of the report, it would not have passed on this inaccurate information to the Toyota Dealership. *Id.* ¶ 55. And, as a result of 700 Credit passing along this inaccurate information, Plaintiff "suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file." *Id.* ¶ 93. The Court thus finds that Plaintiff has sufficiently alleged that 700 Credit's actions are "at least in part responsible" for

his injuries. *Judd*, 718 F.3d at 315-16. Accordingly, 700 Credit's Motion to Dismiss will be denied.[2]

### B. Failure to State a Claim

Turning to Nowcom's Motion to Dismiss, to prevail on a claim for violation of Section 1681e(b) of FCRA, a plaintiff must prove that: (1) his consumer report contains inaccurate information; (2) the CRA did not follow reasonable procedures to assure maximum possible accuracy of that consumer report; and (3) damages. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001). It is uncontested that Plaintiff has pleaded sufficient facts as to inaccuracy and damages. *See* Dkt. 31. As to whether Nowcom followed reasonable procedures to assure maximum possible accuracy, Plaintiff alleges that the Experian report resold by Nowcom contained a message stating "INPUT SSN INVALID-OUT OF RANGE" and multiple different names that did not match his own. *See* Dkt. 23 ¶¶ 22-34, 41-46, 60-64. Further, Plaintiff alleges that Experian's procedures for matching consumer information to consumer reports often cause the mixing of one consumer with another and that there have been numerous lawsuits about these issues for over thirty years. *Id.* ¶¶ 19-21. And Plaintiff alleges

---

[2] 700 Credit's argument that Plaintiff has insufficiently alleged the reasonable steps it should have taken is not well-taken. *See* Dkt. 33 at 7-8. For example, Plaintiff alleged that one reasonable step 700 Credit could have taken was "declin[ing] to provide a repackaged Experian report to the dealership on the basis that the Experian report was just too likely to be mixed or inaccurate on account of the fact that no SSN had been provided and that the names on the report were obviously contradictory." Dkt. 23 ¶ 54. 700 Credit argues that, if it had done this, the Toyota Dealership would have denied Plaintiff's application. Dkt. 33 at 7. But at this stage, the Court draws "all reasonable inferences" in Plaintiff's favor. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440. Plaintiff argues that a reasonable inference is that, rather than denying Plaintiff's application, if 700 Credit failed to produce a report because of the unreliability of the Experian report, the Toyota Dealership would have retrieved a different credit report from TransUnion or Equifax instead. Dkt. 40 at 14; *see also* Dkt. 23 ¶ 54 ("Upon information and belief, the dealership would have then likely, of its own accord, pulled Plaintiff's Trans Union or Equifax reports, since 700 Credit was not providing an option via Experian."). At this stage, the inferences that Plaintiff seeks to draw are reasonable.

that, despite this, Nowcom took no action to assure accuracy of Plaintiff's information before conveying the Experian report to Prime Motors LLC.  *Id.* ¶ 31.

In its Motion, Nowcom argues that it cannot be liable based on these facts because (1) Experian is a reputable source, and (2) the report was facially credible because "there are many credible reasons for SSN to state out of range."  Dkt. 31 at 8.  At this stage, however, the Court accepts all facts contained within the Complaint as true and draws all reasonable inferences in Plaintiff's favor.  Here, Plaintiff has plausibly alleged that Experian has known recurring issues regarding mixed files.  Dkt. 23 ¶¶ 19-21.  And, even if it may be true that there are many credible reasons for SSN to state out of range, at this stage, the Court finds it is a reasonable inference that this error, in combination with the numerous other names allegedly contained in the report, plausibly rendered the report not facially credible.  Accordingly, Nowcom's Motion to Dismiss will be denied.[3]

---

[3] Nowcom's additional argument that resellers only have a duty "to accurately **reconvey** the information received from . . . the original consumer reporting agency" is not well-taken.  Dkt. 43 at 2 (emphasis original).  As district judges in this District have recognized, "the Fourth Circuit has made clear that a CRA may not satisfy the 'reasonable procedures' requirement of § 1681e(b) . . . by relying entirely on its vendors to provide complete, up-to-date, and reliable information." *Henderson v. Corelogic Nat'l Background Data, LLC*, 2016 WL 4611570, at *10 n.4 (E.D. Va. Sept. 2, 2016) (citing *Dalton*, 257 F.3d at 417-18); *see also Starkey v. Experian Info. Sols., Inc.*, 32 F. Supp. 3d 1105, 1109 (C.D. Cal. 2014) ("CoreLogic contends that it is a 'reseller' under the FCRA, and that a reseller provides an 'accurate' report simply by accurately reproducing the information furnished to it by other credit bureaus.  The Court is not persuaded."); *Dirosa v. Equifax Info. Servs. LLC*, 2014 WL 3809202, at *3 (C.D. Cal. Jan. 21, 2014) (relying on *Starkey* and rejecting the same argument).

Moreover, the case Nowcom cites does not support its proposition.  *See* Dkt. 43 at 2-3 (citing *Baker v. Experian Info. Sols., Inc.*, 2015 WL 4603080 (C.D. Cal. 2015)).  In *Baker*, the court applied the Section 1681e(b) requirements to the reseller and concluded, based on the totality of the specific circumstances presented in that case, that the reseller's procedures were reasonable as a matter of law.  2015 WL 4603080, at *5 ("[T]he Court finds that the very specific factual details of the information reported, the lack of a direct conflict with other reports, Defendant's role as an intermediary, and Plaintiff's name being exactly like his father[']s all favor finding reasonable procedures were not lacking as a matter of law.").  Unlike in *Baker*, Plaintiff here has

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

ORDERED that Defendant Nowcom, LLC's Motion to Dismiss (Dkt. 31) is DENIED; and it is

FURTHER ORDERED that Defendant 700 Credit, LLC's Motion to Dismiss (Dkt. 32) is DENIED; and it is

FURTHER ORDERED that a scheduling order shall issue promptly.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED.

Alexandria, Virginia
March 17, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

---

alleged that the report lacked facial credibility.  Accordingly, even if a reseller would be reasonable in some instances to rely on its vendor, Plaintiff has adequately alleged at this stage that this is not one of those instances.